IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DMITRII KAZACHKOV,<br><br>   Plaintiff/Petitioner,<br><br> vs.<br><br>SHIKHA DOSANJ, Warden, Federal Detention Center, Honolulu, Hawaiʻi; POLLY KAISER, Acting Field Office Director, San Francisco Field Office, Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security, in their official capacities,<br><br>   Defendants/Respondents. | CIV. NO. 26-00355 SASP-WRP<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE |

<u>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE</u>

Petitioner Dmitrii Kazachkov ("Kazachkov") is an immigration detainee who has been in custody for more than eight months post-final removal order, and is presently housed at the Federal Detention Center Honolulu ("FDC Honolulu"). On July 9, 2026, he filed a Petition for Writ of Habeas Corpus ("Petition"), arguing that his prolonged detention violated the United States Supreme Court's ("Supreme Court") decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal from the United States is not reasonably foreseeable. [Pet. Writ Hab. Corp. ("Pet."), ECF No. 1.] For the reasons stated, Kazachkov's Petition is DENIED without prejudice.

## I.   FACTUAL BACKGROUND

Kazachkov is a native and citizen of Russia. [Pet. ¶ 23; 7/20/26 Decl. of John Aguon ("Aguon Decl."), ECF No. 11-1 ¶ 6.] Kazachkov alleges that he faced persecution in Russia following his participation in a political protest against the Russian government, and was warned that if he continued his political activities he and his wife would be physically harmed.

[Pet. ¶¶ 4–5, 29–32.] As a result, in May 2019, Kazachkov fled Russia and was paroled into Guam by Customs and Border Protection ("CBP") on May 14, 2019 under the "Guam/CNMI-Only ("CP") Parole [P]rogram," for a period not to exceed June 8, 2019. [Aguon Decl. ¶¶ 7–8; Pet. ¶ 33.] Kazachkov never departed the United States; applied for political asylum in 2020; and remained in Guam while awaiting an asylum interview. [Pet. ¶¶ 6, 34; *see* Aguon Decl. ¶ 8.]

Six years after he was paroled into the country, on June 12, 2025, Kazachkov attempted to board a flight from Guam to Honolulu, and was arrested and taken into custody by Homeland Security Investigations ("HSI") in Guam. [Aguon Decl. ¶ 9.] At that point, the Department of Homeland Security ("DHS") placed Kazachkov into removal proceedings, charging him as removable under Section 212(a)(7)(A)(i)(I)[1] of the Immigration and Nationality Act ("INA"). [*Id.* ¶ 11.] On or around October 29, 2025, an immigration judge ordered Kazachkov removed to Russia. [Aguon Decl. ¶ 13; *see* Pet. ¶ 38.] Kazachkov waived appeal, and his removal order became final on or around November 29, 2025. [*See* Pet. ¶¶ 1, 11, 38, 68; Aguon Decl. ¶ 14.]

On December 23, 2025, Kazachkov was transferred from the Guam Department of Corrections to FDC Honolulu. [*See* Aguon Decl. ¶¶ 10, 15; Pet. ¶ 12.] Kazachkov does not have a valid, unexpired passport that would permit his removal to Russia. [Aguon Decl. ¶ 16; Pet. ¶¶ 7, 15, 35, 39, 75.] Accordingly, on or around January 27 or 28, 2026, United States Customs and Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") "submitted a Travel Document Request ('TDR') packet to DHS Removal and International Operations ('RIO') for assistance in getting [him] a travel document from the government of Russia." [Aguon Decl. ¶ 16; *see* 7/29/26 Suppl. Decl. of John Aguon ("Suppl. Aguon Decl."), ECF

---

[1] Section 212 is codified at 8 U.S.C. § 1182.

No. 15-1 ¶ 6.] "On or around March 3, 2026, ERO Guam requested [a] seat[] for [Kazachkov] on the upcoming charter to Russia scheduled for March 28, 2026." [Suppl. Aguon Decl. ¶ 7.] That arrangement never materialized.

On March 3, 2026 and June 9, 2026, respectively, DHS determined that Kazachkov should not be released from DHS custody pending the expected receipt of travel documents to effectuate his removal. [*Id.* ¶¶ 17–18] "As of July 9, 2026, the verification process for [Kazachkov] was complete and [his] travel document was ready for issuance after an in-person interview with the Russian Embassy located in Washington, D.C." [*Id.* ¶ 19; *see* Suppl. Aguon Decl. ¶ 9.] Further, the Government made the following arrangements:

> On July 10, 2026, [Kazachkov] was tentatively scheduled for departure from Honolulu on July 15, 2026, and arriving at Washington D.C. on July 16, 2026. [He] was then tentatively scheduled for a mandatory interview at the Russian Embassy on July 16, 2026, or July 17, 2026. [Kazachkov's] removal from the United States was scheduled for July 23, 2026, departing Washington D.C. via Royal Air Maroc, with a layover in Morocco, landing in Moscow, Russia on July 25, 2026.

[Aguon Decl. ¶ 20; *see also* Suppl. Aguon Decl. ¶¶ 10–13.] According to Respondents, "[u]pon completion of the interview, the travel documents would likely be issued[.]" [Suppl. Aguon Decl. ¶ 10; *see also id.* ¶ 20.] These removal arrangements, however, were subsequently cancelled purportedly due to this Court's July 10, 2026 Entering Order directing, among other things, Respondents not to transfer Kazachkov out of this District during the pendency of these proceedings ("Anti-Transfer Order"), ECF No. 9. [Aguon Decl. ¶ 21; Suppl. Aguon Decl. ¶ 14.]

As of July 29, 2026, the Government attests to the following with respect to the removal of Kazachkov and his wife, collectively referred to as "Petitioners":

> 16. Petitioners are manifested for the upcoming charter flight scheduled for August 14, 2026. Petitioners will be prepared for removal with staging in Alexandria, LA. RIO can coordinate the in-person interview with the Russian Embassy because the travel documents are only valid for 14 days. Petitioners

3

must comply with the Russian guidelines of voluntarily signing for the travel documents. The travel documents will not be issued if Petitioners are non-compliant with this procedure.

17. On July 28, 2026, ERO Honolulu scheduled the Petitioners on a commercial flight to fly out of August 3, 2026, via United Airlines Flight 344 departing at 3:25 p.m. from HNL, arriving at IAD on August 4, 2026. ERO Honolulu has requested bed space and transportation from ERO Washington D.C. pending the Petitioners' interview with the Russian Embassy.

18. RIO will coordinate with the Russian Embassy for an interview date. Based on the recent working relationship with the Russian embassy and related counterparts, RIO does not anticipate any issues with rescheduling the interview within the current flight plans.

19. Interviews are not held at the Embassy, they are conducted at a detention facility in Chantilly, VA. Embassy officials will travel to the detention facility to conduct the interviews in person. RIO communication with the Russian Embassy during the repatriation process is through email correspondence.

20. As of July 9, 2026, the Russian Embassy has notified HQ RIO that the Petitioners' citizenship verification process is complete, and travel documents are ready for issuance. RIO and Russian Embassy will coordinate the in-person interview in conjunction with the travel itinerary from Honolulu, HI to Chantilly, VA. Once the Court approves the removal of Petitioners, RIO will email local ERO, in this case, ERO Honolulu and request for removal to Russia. ERO Honolulu is advised that upon receipt of the itinerary, RIO will coordinate the in-person interview and confirm.

21. RIO can confirm that the Petitioners will be scheduled for their in-person interview with the Russian Embassy in time for their charter flight scheduled for August 14, 2026.

22. RIO will need to work with Russian Embassy to select an interview date which will require Russian officials and ERO officers to coordinate transportation to the interview location prior to receiving the Court's order allowing removal from this jurisdiction. However, based on the ongoing and recent relationship, RIO is confident that it will obtain an interview date within the scheduled flights.

23. Following the interview, Petitioners will then be prepared for removal in Alexandria, LA for the charter flight for Russia. Petitioners will also have an additional opportunity to interview with the Russian Embassy in Alexandria, LA on August 13, 2026. Officials from the Consulate General of the Russian Federation in Houston will travel to staging for the charter flight to Alexandria, LA to conduct additional interviews as necessary in preparation for the charter flight to Russia. Petitioners will then be removed via charter on August 14, 2026.

4

[Suppl. Aguon Decl. ¶¶ 16–23.]

## II.  PROCEDURAL BACKGROUND

While detained at FDC Honolulu, on July 9, 2026, Kazachkov filed his Petition, seeking, among other things, his immediate release from ICE custody under an order of supervision. [Pet. ¶¶ 19, 55, 99.] On the same day, this Court issued its Anti-Transfer Order directing Kazachkov to serve Respondents no later than July 10, 2026. [ECF No. 9.]

On July 10, 2026, the Court issued an Entering Order directing Respondents to show cause on or before July 20, 2026, as to whether there are any factual or legal issues in this case that distinguish it from the Court's prior orders in *Nguyen v. Dosanj et al*, Case No. 1:26-cv-00109-SASP-RT, ECF No. 12, and *Huynh v. Smith et al*, Case No. 1:26-cv-00014-SASP-WRP, ECF No. 27; and/or other courts' prior orders in *Tran v. Dosanj*, No. 26-00271 MWJS-WRP, 2026 WL 1893531 (D. Haw. June 30, 2026), *Jun B.X. v. Dosanj*, No. 26-00200 MWJS-RT, 2026 WL 1149284 (D. Haw. Apr. 27, 2026), *Malik v. Dosanj*, No. 26-00060 MWJS-WRP, 2026 WL 638483 (D. Haw. Mar. 6, 2026), and *Vu v. Dosanj*, No. 26-00013 MWJS-RT, 2026 WL 594740 (D. Haw. Mar. 3, 2026), and justify denying the Petition, or, if there are none, indicate that the matter is not substantively distinguishable ("OSC"). [ECF No. 9.]

The parties timely submitted their respective pleadings. [ECF Nos. 11–12.] On July 20, 2026, Respondents responded to the Court's OSC. [ECF No. 11.] Respondents maintain that "the legal issues in this case are not substantively distinguishable from those cases referenced above," but that "there are considerable factual differences between Kazachkov and those [p]etitioners" due to his tentative removal arrangements which are indicative of "a significant likelihood that Kazachkov will be successfully removed to Russia in the reasonably foreseeable future." [*Id.* at PageID.44–45.] Respondents' pleading is supported by the declaration

5

of a deportation officer. [*See* Aguon Decl., ECF No. 11-1.] On July 21, 2026, Kazachkov filed his reply. [ECF No. 12] He argues, among other things, that Respondents' previous tentative removal arrangements are not concrete evidence demonstrating a significant likelihood of removal. [*Id.*]

On July 28, 2026, the parties appeared for a joint status conference on Kazachkov's Petition, and his wife's Petition, which is also before this Court in a separate proceeding. [7/28/2026 Minutes, ECF No. 14.] There, the Court posed several questions to the parties, and requested Respondents' submission of a supplemental declaration providing responses to, at minimum, the following:

> • On what date were Petitioners' Travel Document Requests ("TDR") complete and ready to be submitted to the Russian government?
>
> • What has ICE done from January 27, 2026 to July 9, 2026 with respect to Petitioners' TDRs?
>
> • Have Petitioners' TDRs been submitted to the Russian government? If so, when?
>
> • When were arrangements for Petitioners' original interviews and flights made?
>
> • In light of Petitioners' scheduled August 14, 2026 charter flight(s) to Russia, when will Petitioners' (1) interviews with the Russian Embassy in Washington, D.C., and (2) associated flights to Washington, D.C., be rescheduled?
>
> • Procedurally, what does the interview and post-interview process entail? (i.e., are travel documents issued as a matter of course after the interview?)

[*Id.*]

On July 29, 2026, Respondents timely filed the requested supplemental declaration. [Suppl. Aguon Decl., ECF No. 15-1.] One day later, Kazachkov timely filed his response. [ECF No. 17.]

6

**III.**        **DISCUSSION**

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). Under that statute, a noncitizen subject to a final order of removal is ordinarily subject to a 90-day "removal period" during which detention is mandatory, *see* 8 U.S.C. § 1231(a)(1), (2), after which the government may continue to detain certain noncitizens in its discretion, *see id.* § 1231(a)(6). But the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001) held that § 1231(a)(6) does not authorize indefinite detention and must be read to contain an implicit limitation permitting detention only for a period reasonably necessary to secure removal. 533 U.S. at 689, 701. The Court recognized six months as a presumptively reasonable period of post-removal-order detention. *Id.* at 701. After those six months, a noncitizen is entitled to relief if he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the government must come forward with evidence sufficient to rebut that showing. *Id.* The six-month period is a threshold the petitioner must cross before the burden shifts; it is not itself a ground for release. *Id.*

Applying that framework here, the Court first concludes that Kazachkov has crossed the six-month threshold. Kazachkov has remained in custody for a period exceeding eight months after the issuance of his final order of removal. So, the presumptively reasonable period recognized in *Zadvydas* has passed.

But that fact alone does not entitle Kazachkov to relief, because crossing the six-month threshold does not by itself establish a *Zadvydas* violation. *Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

7

future.'" *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003) (citation omitted). It is only once the Petitioner meets that burden that ICE must "introduce evidence to refute that assertion." *Id*.

Kazachkov falls short of meeting that burden. As an initial matter, Kazachkov has not provided sufficient evidence at this stage to show that Russia "would refuse to accept him, or that his removal is barred by our own laws." *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008). Kazachkov asserts that Russia has generally been "slow or unwilling" to issue travel documents to individuals like her who have fled to the United States and claimed asylum for engaging in political activities against the Russian regime; and that the United States Government has classified Russia as "uncooperative," in part, based on its "refus[al] to conduct consular interviews." [*See* Pet. ¶¶ 16, 46.] He also asserts, among other things, that Respondents have failed to fully answer the Court's question in their supplemental declaration with respect to his past and future removal arrangements, and in doing so, have not established a significant likelihood of Kazachkov's removal. [*See* ECF No. 17.]

To the contrary, Respondents represent that but for the Court's July 10, 2026 Anti-Transfer Order, Kazachkov was scheduled for a mandatory in-person interview with the Russian Embassy in Washington, D.C., with his flight departing to Russia on July 23, 2026. [Aguon Decl. ¶¶ 20–21; *see* Suppl. Aguon Decl. ¶¶ 11–14.] Now, as of July 29, 2026, Respondents represent, with significant factual specificity, that Kazachkov is scheduled to depart Honolulu on August 3, 2026 to Virginia; that "the Russian Embassy has notified HQ RIO that [his] citizenship verification process is complete, and travel documents are ready for issuance"; and that Kazachkov "will be scheduled for [his] in-person interview with the Russian Embassy in time for [his] charter flight [to Russia] scheduled for August 14, 2026." [*See* Suppl. Aguon Decl. ¶¶ 17, 20–21.]

On this record, Kazachkov has not carried his burden of showing that his removal is not reasonably foreseeable, and so, he is not entitled to release under *Zadvydas*.

**IV.      CONCLUSION AND ORDER**

For the foregoing reasons, Kazachkov's Petition for Writ of Habeas Corpus, ECF No. 1, is hereby DENIED without prejudice. The Court's July 10, 2026 Anti-Transfer Order, *see* ECF No. 9, is hereby LIFTED. This Order resolves all pending motions. The Clerk of Court is DIRECTED to close this case and enter judgment for Respondents.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, July 30, 2026.



Shanlyn A.S. Park
United States District Judge

---

*Dmitrii Kazachkov v. Shikha Dosanj, Warden, Federal Detention Center, Honolulu, Hawai'i, et al.*; Civil No. 26-00355-SASP-WRP; ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE